584 S.E.2d 371

The STATE, Respondent,

v.

**Roger Dale COBB, Petitioner.**

No. 25687.

Supreme Court of South Carolina.

Heard June 11, 2003.
Decided July 28, 2003.

Assistant Appellate Defender Eleanor Duffy Cleary and Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Senior Assistant Attorney General Norman Mark Rapoport, of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.

Justice PLEICONES:

We granted certiorari to review a decision of the Court of Appeals holding that the circuit court properly refused to sentence Roger Dale Cobb ("petitioner") under the accommodation statute [1]. *State v. Cobb*, 349 S.C. 126, 561 S.E.2d 631(Ct.App.2002). We reverse and remand.

Petitioner was indicted for: distribution of marijuana to a person under 18 years of age, distribution of marijuana, second degree sexual exploitation of a minor, and possession of marijuana with intent to distribute. The jury found petitioner not guilty of distribution of marijuana to a person under 18 years of age; guilty of distribution of marijuana; and guilty of sexual exploitation of a minor. Petitioner was found not guilty of possession with intent to distribute, but guilty of the lesser-included offense of possession of marijuana. Petitioner received a 20 year sentence for distribution [2], a consecutive

---

1. S.C.Code Ann. § 44–53–460 (2002).

2. Petitioner's maximum sentence exposure was enhanced by two prior drug offenses.

five year sentence for exploitation of a minor, and a concurrent one year sentence for possession.

Petitioner appealed the trial judge's refusal to sentence petitioner on the distribution charge under the accommodation statute, and the Court of Appeals affirmed his sentence. *State v. Cobb, supra.* We granted petitioner's petition for writ of certiorari to review this decision, and now reverse and remand to the circuit court.

## ISSUE

Did the Court of Appeals err in finding that the trial court properly refused to consider the distribution charge as an accommodation and therefore mitigate petitioner's sentence?

## DISCUSSION

South Carolina Code Ann. § 44-53-460 (2002) allows a person who is found guilty of distributing certain controlled substances, such as marijuana, to have a hearing and

if the convicted person establishes by clear and convincing evidence that he delivered or possessed with intent to deliver a controlled substance ... only as an accommodation to another individual and not with intent to profit thereby nor to induce the recipient ... of the controlled ... substance to use or become addicted upon the substance, the court shall sentence the person as if he had been convicted of [simple possession].

Petitioner, an adult, drove victim, a sixteen year old minor, and her girlfriend ("girlfriend"), a seventeen year old minor, to his home at victim's request, because she wanted to "get drunk." When they got to petitioner's home, petitioner did not offer victim marijuana, but victim asked if she could smoke some of the petitioner's marijuana. Victim testified that petitioner did not force victim to smoke the marijuana. Later that evening, victim and girlfriend began "making out" and petitioner took a picture of the girls having sex with each other.

The next day, police took victim into custody because she was a runaway, and the victim recounted the events of the previous night to the police. The police obtained a search

warrant for petitioner's home and found a tin can with four ounces of marijuana in it, as well as the photo of the nude girls.

During the accommodation hearing[3], the trial judge held that this event was not an accommodation distribution because petitioner profited by satisfying his prurient interests. The Court of Appeals affirmed the trial court's decision holding this was not an accommodation distribution because "[petitioner] benefited from his furnishing of the marijuana to the victim because he watched the girls undress and engage in a sexual act. [Petitioner] also used the opportunity to take [a] naked picture[ ] of the girls." *State v. Cobb, supra* at 128, 561 S.E.2d at 633. We disagree with the Court of Appeals that the phrase "intent to profit" as used in the accommodation statute is tantamount to "benefit".

 The General Assembly's use of the phrase "intent to profit" clearly demonstrates it was distinguishing transactions that are commercial in nature wherein the defendant intends to profit in a material sense, from those of a more 'personal' nature[4]. *See e.g., State v. McNabb*, 241 N.W.2d 32, 35 (Iowa 1976)(defining "profit" in Iowa's accommodation statute as "the excess of returns over expenditures in a given transaction or series of transactions"); *Barlow v. Commonwealth*, 26 Va.App. 421, 494 S.E.2d 901, 905 (1998)(defining "profit" as "any commercial transaction in which there is consideration involved"). We hold that "intent to profit" in the statute does not mean the distributor merely received a "benefit." Instead the statute requires profit in a commercial sense or a *quid pro quo*, as where the marijuana is used as a medium of exchange. If "intent to profit" as used in the statute means "benefit" as the Court of Appeals implies, the statute would be eviscerated

---

3. Petitioner moved for an accommodation hearing pursuant to S.C.Code Ann. § 44–53–460 (2002), after the jury verdict. No additional evidence was presented at the accommodation hearing, but the parties relied on the evidence presented at trial.

4. In interpreting statutes, "our sole function is to determine and, within constitutional limits, give effect to the intention of the legislature, with reference to the meaning of the language used and the subject matter and purpose of the statute." *State v. Ramsey*, 311 S.C. 555, 561, 430 S.E.2d 511, 515 (1993).

as "benefit" has a broader meaning than "intent to profit" and would arguably apply in any situation.

In the case at hand, the victim testified that petitioner did not offer the marijuana to her, but rather that she asked if she could smoke it. The victim also testified that she did not pay petitioner for the marijuana nor did she do anything in return for its provision. The victim testified that her girlfriend, initiated the kissing, and that both victim and girlfriend initiated sex, not petitioner. The situation presented in this case is a classic accommodation sale. We note that there could be situations when sex is involved in a commercial sense, and thus a "profit" would be realized. That does not apply here because there was no agreement that the drugs were in exchange for the girls having sex or for petitioner taking pictures of them. Moreover, there is no evidence that the pictures were intended for commercial use by petitioner.

The petitioner's actions, while reprehensible, fit clearly within the General Assembly's definition of accommodation.

## CONCLUSION

We reverse the decision of the Court of Appeals. There is no evidence to support the trial court's decision not to sentence petitioner under the accommodation statute. We remand the case to the circuit court to sentence petitioner under the accommodation statute.

**REVERSED AND REMANDED.**

MOORE and WALLER, JJ., concur. BURNETT, J., dissenting in a separate opinion in which TOAL, C.J., concurs.

### Justice BURNETT:

I dissent. The majority narrowly defines "intent to profit" as provided in S.C.Code Ann. § 44–53–460 (2002) as a net commercial gain. The majority overlooks the factual differences which may make a distribution an accommodation in one instance but not in another.

First, in my opinion, the majority's limitation of "intent to profit" to the commercial setting defeats legislative intent. The majority's citation to *McNabb* defining "profit" as "the

excess of returns over expenditures" dismisses other ways drug dealers may "profit". *See Walker v. Commonwealth,* Case No. 2974–01–4 (Va. Ct.App. Filed March 4, 2003) *available at* 2003 WL 722239 (no accommodation where man provided undercover detectives with cocaine in hopes of sharing the drugs); *Barlow v. Commonwealth,* 26 Va.App. 421, 494 S.E.2d 901 (Va.Ct.App.1998) (denying accommodation charge where heroin dealer sold drugs at "costs").

The majority limits the definition of "intent to profit" to either a benefit of a personal nature or a profit in a commercial, material sense. Our task as a Court is not to divine the metaphysical distinction between those two choices, but merely to give effect to the intent of the legislature. *State v. Ramsey,* 311 S.C. 555, 561, 430 S.E.2d 511, 515 (1993).

The intent of the Legislature in enacting § 44–53–460 was to differentiate between suppliers of drugs who, while committing an illegal act, are different from dealers who supply a drug in exchange for a tangible benefit. While I agree with the majority that "intent to profit" necessarily means something more than the distributor gained some intangible benefit from the exchange, this case illustrates the difficulty of narrowly defining the term. The *quid pro quo* of a transaction may often be deduced, as in this case, from the historical relationship between the parties.

Second, an attempt to strictly define "profit" in this statute subverts the Legislature's intent to differentiate between the two types of distributors of illegal drugs.

A specific definition of "intent to profit" may provide a superficial benefit, but only at the sacrifice of comprehensiveness explicit in the statutory language. It is difficult to determine, and thus define, whether a person who supplies marijuana to another is acting in mere benevolence or with a design to obtain some tangible benefit from the transaction.

This Court would better discern legislative intent by refusing to strictly define the term "intent to profit." Instead, we should acknowledge that whether a particular act amounts to an accommodation is a case-specific fact inquiry. As stated above, the *quid pro quo* or the distributor's intent to profit from a transaction may be deduced by the relationship among the parties.

The victim's testimony reveals her relationship with Cobb. She regularly visited his house to smoke marijuana provided by him and would allow Cobb to take nude pictures of her. The behavior of Cobb and the victim on the night in question is a continuation of their historical relationship in which the victim received illegal drugs and Cobb satisfied his prurient interests, in exchange.

This evidence establishes Cobb did not deliver the marijuana as a mere accommodation but intended to profit tangibly from the exchange by satisfying his prurient interests. *See, e.g., State v. McDaniel,* 265 N.W.2d 917, 927 (Iowa 1978) (Uhlenhopp, dissenting).

Accordingly, I would affirm.

TOAL, C.J., concurs.